RECEIVED

DEC 0 1 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

**BERNADETTE HUNTSBERRY** | **CIVIL ACTION NO. 05-1494**

**VS.** | **JUDGE DOHERTY**

**COMMISSIONER OF SOCIAL SECURITY** | **MAGISTRATE JUDGE METHVIN**

**REPORT AND RECOMMENDATION**

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, **IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED.**

***Background***

Born on December 15, 1965, Bernadette Hunstberry ("Huntsberry") is a 40-year-old claimant with a high school education. Huntsberry has worked in the past as a certified nursing assistant, sewing machine operator, and cook. On September 30, 2003, Huntsberry filed an application for disability benefits and supplemental security income, alleging disability as of May 5, 2001 due to back pain she suffers as a result of an automobile accident.[1] Her application was denied initially and on reconsideration, and an administrative hearing was held on November 14, 2004. In an opinion dated February 23, 2005, the ALJ found that Huntsberry retains the residual functional capacity to perform sedentary work and is not disabled.[2] The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner from which Huntsberry now appeals.

---

[1] Tr. 145-146.

[2] Tr. 10-16.

### *Assignment of Errors*

Huntsberry raises the following error: the ALJ failed to find that she is disabled pursuant to Listing 1.05.

### *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

### *Analysis*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the instant case, the ALJ determined at Step 5 that although Huntsberry suffers from headaches and a back disorder, impairments that are severe within the meaning of the regulations, she retains the residual functional capacity to perform sedentary work. Applying the Medical-Vocational Guidelines, the ALJ concluded that Huntsberry is not disabled.

After careful consideration of the record, the undersigned concludes that the ALJ's decision is supported by substantial evidence.

**I. <u>Listing 1.04 and Residual Functional Capacity</u>**

Huntsberry contends that her condition meets and/or equals one of the listed impairments in Section 1.05 of Appendix I. This regulation, however, refers to amputations, which are not relevant in this case. The undersigned assumes that Huntsberry intends to argue that she satisfies the requirements of Listing 1.04 for disorders of the spine. Listing 1.04 states:

> **1.04 Disorders of the spine** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with

> associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 220, App. 1, Listing 1.04 (2005) Social Security Administration.

Huntsberry does not specify which portion of Listing 1.04 she allegedly satisfies. After review of the entire record, the undersigned concludes that the medical records do not support a finding that Huntsberry satisfies any of them.

Huntsberry injured her back on May 5, 2001 when she was involved in an automobile accident. After the accident, Huntsberry was taken to Abbeville General Hospital for treatment. X-rays of her knees, wrist, and lumbosacral spine were normal.[3]

On May 17, 2001, Huntsberry was examined by Dr. Robert D. Franklin, a physical medicine/rehabilitation doctor.[4] Dr. Franklin reported that Huntsberry complained of injuries to her neck, upper back, low back, right thigh, and right hand and wrist pain after being involved in an automobile accident. Dr. Franklin reported that Huntsberry had myofascial pain syndrome, left rotator cuff tendonitis, and possible right carpal tunnel. Dr. Franklin opted to treat her

---

[3] Tr. 135-136.

[4] Tr. 141-143.

conservatively, including physical therapy.[5] Dr. Franklin examined Huntsberry again on June 5, 2001, and he reported that although she was slowly improving, and no spasm was noted in her back.[6]

On June 25, 2001, Dr. Franklin reported that although Huntsberry had subjective complaints of pain with cervical range of motion, she was "neurologically intact with regard to motor and reflexes in the upper and lower extremities."[7] A MRI was taken on July 3, 2001, which showed a small disc herniation at L5-S1.[8]

On August 29, 2001, Huntsberry was examined by Dr. John Cobb, an orthopedic surgeon.[9] Dr. Cobb noted that Huntsberry had normal range of motion, normal sensory and motor function, negative straight leg raise testing bilaterally. Dr. Cobb diagnosed post-traumatic cervical pain syndrome with radiculitis on the right and symptomatic disruption at L5-S1.

On September 26, 2001, Dr. Cobb reported that MRIs taken of Huntsberry's cervical spine taken on September 18, 2001 were normal.[10] On February 2, 2002, Dr. Cobb noted that examination of Huntsberry's back, stance, posture, gait, motor function, and sensory function were normal.[11]

---

[5] Tr. 143.

[6] Tr. 140.

[7] Tr. 139.

[8] Tr. 138.

[9] Tr. 111-112.

[10] Tr. 105.

[11] Tr. 104.

On August 26, 2002, Dr. Cobb reported that Huntsberry had slight decreased range of motion because of pain.[12] Huntsberry had a slight list. On January 22, 2003, Huntsberry had normal range of motion and it was noted that she had pretty good success with selective nerve blocks.[13]

Considering the medical evidence as a whole, the undersigned concludes that Huntsberry fails to establish that she meets any of the requirements of any section of Listing 1.04. Clearly, Huntsberry does not satisfy the requirements of either Listing 1.04(A) for nerve root compression or Listing 1.04(B) for spinal arachnoiditis. Furthermore, the evidence shows that Huntsberry does not satisfy the requirements of Listing 1.04(C) for lumbar spinal stenosis resulting in pseudoclaudication, as there is no evidence in the record that Huntsberry is unable to ambulate effectively as defined in the regulations. Although the record supports that Huntsberry did have pain, occasional muscle spasm and slight listing at one time, there is no medical evidence that she had nerve root compression, limitation of the spine, or an inability to ambulate. Without this medical evidence, Huntsberry did not meet the requirements of a listed impairment, and therefore, there is substantial evidence in the record to support the Commissioner's finding. claim that she meets or equals the requirements of Listing 1.04 is without merit.

***Conclusion***

Considering the foregoing, it is recommend that the Commissioner's decision be **AFFIRMED.**

---

[12] Tr. 103.

[13] Tr. 102.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) days from receipt of this Report and Recommendation to file specific, written objections with the Clerk of Court. Counsel are directed to furnish a courtesy copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana on December 1, 2006.

COPY SENT:
DATE: 12/1/06
BY: Cw
TO: mem
RFD

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)